**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**-----------------------------------------------------x**
**UNITED STATES OF AMERICA,**

                                                                    **23 Cr. 236 (FB)**

      **-against-**

**SAGAR SINGH,**

          **Defendant.**

**-----------------------------------------------------x**

# Exhibits

## LIST OF EXHIBITS

Exhibit A     Letter of Rittu Singh

Exhibit B     Letter of Sheena Singh

Exhibit C     Letter of Shalina Mondesir

Exhibit D     Letter of Shalbinda Singh

Exhibit E     Defense Letter to Probation (Objections to PSR)

# Exhibit A

# Letter of Rittu Singh

May 16, 2025

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Block,

My name is Rittu Singh, and I am the mother of Sagar Steven Singh. I am writing to you with a sincere and heavy heart to share my perspective as a parent, and to respectfully ask for your compassion as you consider my son's case.

Sagar is my only child. I've raised him as a single mother since losing my husband — his father — during the COVID-19 pandemic. That loss was devastating for both of us. They were extremely close, and since his passing, along with the loss of Sagar's grandparents not long before, our small family has experienced deep emotional hardship. These events left Sagar carrying more than I realized, even while he tried to remain strong for me.

As a child, Sagar was loving, polite, and deeply caring. He was the kind of boy who never gave me trouble — always respectful, always eager to do well. He played soccer from a young age, always showed up on time for school and practices, and was committed to whatever he took on. Teachers would often tell me how well-behaved and hardworking he was. Even at home, he was considerate, responsible, and a constant emotional support to me, especially after we lost his father.

It is difficult as a parent to fully grasp or monitor everything happening in your child's world — especially when it involves technology and online spaces that I admit I do not fully understand. I was not aware of the extent of what Sagar was involved in until all of this came to light. As a mother, it's painful to know that I missed signs, or didn't realize how certain choices were affecting him or where they might lead. But I truly believe that Sagar never intended to cause harm in a malicious way. He made serious mistakes — and I know he has learned from this experience and is deeply remorseful.

What I ask of the Court is not to overlook the seriousness of what happened, but to please also see the full picture of who Sagar is and what he has gone through. He is still young, with so much potential ahead of him. He is intelligent, kind, and capable of contributing

positively to the world with the right guidance and opportunity. I believe this situation has been a profound wake-up call for him. It has already changed him.

We are each other's only immediate family. The thought of a long separation is extremely difficult, and I worry not only for myself but for his well-being and future. I respectfully ask for your leniency — not because we do not take this seriously, but because I know Sagar has so much good in him. I hope he will be given the opportunity to rebuild, to learn from this, and to move forward in a better direction.

Thank you for taking the time to read my letter and for allowing me to speak as a mother who loves her son deeply and is holding onto hope for his future.

Sincerely,


Rittu Singh

# Exhibit B

# Letter of Sheena Singh

August 29, 2024

Honorable Judge Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Block,

I am Sheena, first cousin to Sagar. I am a graduate of the University of Rhode Island with a BS in Human Development and Family Studies. I hold an executive certification in Human Resources from Bryant University. I have been a practitioner of Human Resources for 13 years in the nonprofit sector, most recently holding a Director position for the last 4 years. I have been married to my college sweetheart, James, for 11 years, and we have a daughter entering first grade.

To provide a complete picture of who Sagar is, I feel it is important to share our family's history and the dynamics that have shaped him. Our family immigrated from the Fiji Islands to Rhode Island in pursuit of the American Dream. We are of Indian descent, and our ancestors were brought to Fiji by the British with promises of a better future, only to end up laboring in sugar cane fields. We often joke about the move from a beautiful island to Rhode Island, but the truth is that it was a choice made for freedom, opportunity, and the dream of a better life—not only for themselves but for us, their children and grandchildren.

We all grew up in Pawtucket, RI, an urban and low-income community. We lived on the same street, just one house apart, and were supported by aunts, uncles, and two doting grandparents. The love and support we received from our grandparents were instrumental in our upbringing, and we were fortunate to experience such a strong family bond. We were provided a life of community and love and didn't know we were "poor" until we went to college.

As first-generation Americans, my cousins and I received a lot of encouragement to become something and to do something that would help us and our families create a better life. There are five cousins who lived in the neighborhood, and Sagar is the youngest of our cousin group by almost 17 years. He watched all of us, as a young child, graduate college, buy houses, get married, and have children. We all believed he would follow in the same footsteps.

As someone who believes that every person is shaped by their layers—socioeconomic, educational, family, cultural, and opportunities—I feel it's important to share them with you so you can understand him. Sagar's layers include unequal starts compared to some of his peers, combined with trauma. Sagar began in a low-income family from an inner city, with a poor school system and little support. He did well in school, making the honor roll, and he loved soccer, just like his dad. His goal was to earn a soccer scholarship to college.

In 2017, many things changed for Sagar at the age of 13, which I believe is when his layers of trauma began. Our grandfather passed away in May from an illness in the hospital. This was very upsetting for him, as Sagar had lived with our grandparents for all of his life. Our grandfather was everything to him.

Two months later, our grandmother died from cancer and a broken heart. She and my grandfather had been married for 65 years. Sagar suddenly lost both of his live-in grandparents, both of whom loved him unconditionally. Three weeks after my grandmother passed away, I lost our first daughter in late pregnancy. This loss devastated the family, but especially my Uncle Suchen, Sagar's father. He was the uncle who took care of me and my sister when we were growing up, having lived with us as a teenager and only moving next door with my grandparents.

Uncle Suchen, who had always been a pillar of strength for our family, began drinking heavily to cope with the grief. He had lived with his parents all his life and was deeply affected by their loss. Sagar, witnessing his father's struggle, began to see a different, darker side of life.

Three years later, the world was engulfed in the COVID-19 pandemic. Schools shifted online, and Sagar's father became seriously ill. In April 2020, Uncle Suchen was hospitalized with COVID-19 and tragically passed away alone, as pandemic restrictions prevented us from being with him. Sagar could not see him, hold him, or say goodbye. To say goodbye to your father via FaceTime with a nurse you don't know, or from an illness the world doesn't know how to stop or treat, was devastating.

The once lively household, which had been home to five people, was now reduced to just Sagar and his mother. Financially, they were struggling. My aunt worked part-time in retail, but the loss of my uncle's income and the retirement funds from my grandparents left them with very little. Sagar was left to navigate school and after-school life largely on his own.

Despite the efforts of our family to support him, the weight of these responsibilities and the trauma he had experienced were too much for a young person to bear. At 16, Sagar's young brain is not fully developed, he did not have enough education or real-world experience. But he felt the need to become the "man of the house," but without the necessary guidance and maturity, he made decisions that have led him to the situation he is in now.

In taking on this role, Sagar used what was available to him—his intelligence. Unfortunately, this has led him and our family to see him convicted of a criminal charge. The house that was once home to five will now have only one, leaving his mother alone. Meanwhile, a young adult who needs more guidance and education will face another traumatic experience of sentencing at 20, that will shape him. How can we rehabilitate Sagar and help him become a productive member of society, and channel his intelligence for good purposes?

I share all of this with you to offer context for Sagar's actions. He is not a bad person; he is a young man who has been through an extraordinary amount of hardship and loss in a short period of time. I believe that with the right support and guidance, Sagar has the potential to turn his life around.

Thank you for taking the time to consider my letter. I hope it provides some insight into Sagar's character and the circumstances that have shaped him and his actions. I know that you are compassionate and will consider my letter and background when making your decision. I look forward to reading your next book "A Second Chance" and wonder if you will find Sagar worthy of one. Thank you for your time.

Sincerely,

Sheena Singh

# Exhibit C

# Letter of Shalina Mondesir

September 1, 2024

Shalina Mondesir
26 Warwick Road
Pawtucket, RI 02861

Hon. Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Block,

My name is Shalina Mondesir. I live in Pawtucket, RI with my husband and two-year-old daughter. I work as a Cost Accountant for a large construction company in Norfolk, MA. Sagar is my first cousin on my mother's side. We grew up on the same street, only one house apart for most of our lives.

I am aware that Sagar is to be sentenced based on his conviction of a criminal offense. To see a better picture, I feel as though you may need to know more about Sagar's childhood. He grew up in a very loving household filled with his grandparents (my mom's parents), mom (Ritu) and dad (Suchen). He was happy, loved and spoiled immensely since he was the baby of our family.  He has always been bright, sharp and ahead of the kids his age. Loved to play soccer and hang out with his friends from school. Then in 2017, my grandfather died. Although he was old, his passing was sudden and heartbreaking for us all. While still healing from this, only three months later my grandmother passed away from cancer. Sagar's childhood home went from 4 loving adults to two in a matter of months. My uncle (Suchen), who lived with his parents his whole life was devastated and so was Sagar. In 2020, Suchen passed away in the hospital from Covid. He was alone, isolated and his wife and son had to say goodbye to him through Facetime. After these traumatic events, understandably Sagar was in a dark place. He stopped playing soccer, going to school and seeing his friends. Fortunately, his mother has always been there for him. Although she is struggling emotionally and financially, she remained a strong figure to him. Sagar is on a much better path now. He got his GED and is starting a new job this month. He's been playing soccer and re connecting with his old friends. He is striving to be a better person in society and to also help support his mom at home. He's been making an effort to better connect with his family and friends and attending social events. Sagar is mature, bright,

healthy and thriving. He has gained clarity on what he needs to do to help put himself on a better path in life. He is responsible and caring and is doing everything he can to make sure him and his mom are okay.

Although he has made some mistakes, with continued guidance, support and love I think Sagar will make the right decisions going forward and be a productive member of society.

I appreciate your time and consideration.


Respectfully,

Shalina Mondesir

# Exhibit D

# Letter of Shalbindra Singh

**Shalbindra Singh**
92-6029 Holomoku St,
Kapolei, HI, 96707
Shalbin1985@gmail.com
401-359-4964
08/19/2024

**The Honorable Frederic Block**
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Block,

I am writing to you regarding my cousin, Sagar Singh, who is awaiting sentencing. My name is Shalbindra Singh, and I am 40 years old, currently residing in Hawaii, where I work as a manager for the City and County of Honolulu. I have known Sagar since he was a baby, and despite the physical distance between us, I have remained in close contact with him through electronic communication.

I am aware that Sagar is to be sentenced following his conviction of a criminal offense. This situation has been profoundly difficult for our family, especially for Sagar and his mother, who have endured significant hardships since the passing of Sagar's father due to COVID-19. Sagar was very young at the time of his father's death, and without a paternal figure to guide him, he lost his way for a period.

Sagar is the only child of his parents, and after his father's passing, he became the primary emotional support for his mother, who is now the sole provider for their household. The family has faced the additional burden of managing a mortgage left behind by Sagar's father. After getting into trouble, Sagar withdrew from activities he once loved, like playing soccer. However, I am pleased to share that he has recently started playing again and returning to work next month with a renewed sense of responsibility to support his mother.

I have seen Sagar grow and mature over the past months as he gains a clearer understanding of the realities of life. He is making a sincere effort to put his life back together and become a productive member of society. His determination to help his mother and take on more responsibilities at home reflects the positive direction in which he is heading.

I respectfully ask that you consider Sagar's personal circumstances and the efforts he is making to rebuild his life as you decide on his sentence. I believe that with continued support and guidance, Sagar has the potential to learn from his mistakes and make meaningful contributions to his community and family.

Thank you for your time and consideration.

Respectfully,

Shalbindra Singh

# Exhibit E

# Defense Letter to Probation (Objections to PSR)

# JEREMY GUTMAN
ATTORNEY AT LAW
**521 FIFTH AVENUE, 17TH FLOOR**
**NEW YORK, NEW YORK 10175**

(212) 644-5200                                                                                                                    JGUTMAN@JEREMYGUTMAN.COM

May 15, 2025

**By Email (Maxine_Marquez@nyep.uscourts.gov)**

Maxine Marquez
United States Probation Officer
27 Johnson Street
Brooklyn, New York 11201

   Re: United States v. Sagar Singh
      23 Cr. 236 (FB)

Dear Ms. Marquez:

  On behalf of my client, Sagar Singh, I am writing to submit the following objections to the Presentence Investigation Report ("PSR"):

  **Paragraphs 26, 91, and 92:** We object to the assertion that restitution is authorized with respect to Count Two (Aggravated Identity Theft) pursuant to the Mandatory Victim Restitution Act of 1996 ("MVRA"). The MVRA authorizes a sentencing court to order a defendant to pay restitution to a "victim" of the offense, and it defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). The statute "does not authorize the court to order a defendant to pay restitution to any person who was not a victim of *the offense of which the defendant was convicted.*" *United States v. Seabrook*, 968 F.3d 224, 236 (2d Cir. 2020) (emphasis added). *See United States v. Oladimeji*, 463 F.3d 152, 158 (2d Cir. 2006) (quoting *Hughey v. United States*, 495 U.S. 411, 420 (1990))("the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order").

  Where, as in the present case, the defendant was convicted on a plea of guilty, courts determine the conduct that constitutes the offense by looking to "the materials supporting the plea – such as the allocution statement, the plea agreement, and the indictment." *United States v. Goodrich*, 12 F.4th 219, 230 (2d Cir. 2021). The conduct alleged in Count Two of the indictment was that Singh "did knowingly and intentionally

Maxine Marquez
May 15, 2025
Page 2

transfer, possess and use, without lawful authority, one or more means of identification of another person, to wit: a login credential of a law enforcement officer." Indictment, p. 4. The conduct acknowledged during the plea allocution was that Singh logged into a portal associated with a federal agency using credentials he did not have permission to use. Transcript of plea (ECF Doc. 49), p. 32. Because no victim was "directly and proximately" harmed by that conduct, an order of restitution would exceed the Court's authority under the MVRA.

**Paragraph 96:** We do not object to a condition prohibiting contact with any person described as a "victim" in the "Offense Conduct" section of the PSR, but, for the reasons discussed with respect to the objection above, we believe it is confusing to refer to any such person as a victim "of the instant offenses." Accordingly, we request that this condition be reworded.

**Paragraph 97:** We object to the computer monitoring condition on the ground that it is unnecessary and unduly burdensome and intrusive. The Sentencing Guidelines recommend such conditions only with respect to defendants convicted of sex offenses. *See* U.S.S.G. § 5D1.3(d)(7)(B) and (C). In view of the fact that Mr. Singh has been subject to such monitoring throughout the time he has been released on bail and there have been no issues with his compliance, we dispute the necessity for continued monitoring after service of a prison sentence, and we dispute the propriety of requiring that Mr. Singh bear the expense of such monitoring.

In addition to finding, based on an individualized assessment, that a condition is reasonably related to one of the purposes of sentencing, the Court must ensure that the condition imposes "no greater restraint on liberty than is reasonably necessary." *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020). With respect to computer monitoring, the Second Circuit has cautioned that conditions must be "narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into [their] net." *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004).

The proposed condition not only permits capture of "all data" on the defendant's devices (without even requiring measures to prevent intrusion into privileged communications), but also extends (without any apparent justification) to geolocation data. The condition permits warrantless seizure of devices "for further analysis by law enforcement or the Probation Officer" based only on an Officer's "reasonable suspicion." We submit that these intrusions on constitutionally-protected privacy interests are overbroad.

Maxine Marquez
May 15, 2025
Page 3

  **Paragraph 98:** The Guidelines recommend a discretionary condition requiring access to financial information only in connection with orders to pay restitution, forfeiture, or a fine. *See* U.S.S.C. § 5D1.3(d)(3). For the reasons discussed above, there should be no order of restitution, and the PSR indicates, at paragraph 78, that Mr. Singh appears unable to pay a fine. While there will be an order of forfeiture pursuant to the terms of the plea agreement, *see* PSR, ¶ 93, that order will be satisfied by property that has already been seized. Thus, ongoing access to Mr. Singh's financial data will not be necessary to ensure compliance with that order.

  Please let me know if you would like to discuss these objections.

            Very truly yours,

            /s/
            Jeremy Gutman


cc. : Ellen Sise, Esq.
   Alexander Mindlin, Esq.
   Adam Amir, Esq.
   *Assistant United States Attorneys* (by email)